UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

SCOTT McKAY                                    CIVIL ACTION

VERSUS                                         NO: 12-2364

BW OFFSHORE USA MANAGEMENT,                    SECTION: J
INC., BW PIONEER, BOA MARINE
SERVICES, INC., BOA ROVER,
DANOS & CUROLE MARINE
CONTRACTORS, L.L.C., and THE
GRAY INSURANCE COMPANY


<u>**ORDER AND REASONS**</u>

Before the Court are two Cross-Motions for Summary Judgment,
one brought by Defendants Danos & Curole and The Gray Insurance
Company ("D&C/Gray") **(Rec. Doc. 33)**, and the other brought by
Defendant BOA Marine **(Rec. Doc. 36)**, as well as the parties'
respective Oppositions **(Rec. Docs. 42 & 52)**. Having considered the
motions, the parties' submissions, the record, and the applicable
law, the Court finds, for reasons expressed below, that D&C/Gray's
Motion for Summary Judgment should be **DENIED** and that BOA Marine's
Motion for Summary Judgment should be **GRANTED.**

**PROCEDURAL AND FACTUAL BACKGROUND**

At the times relevant to this litigation, the M/V BW PIONEER
("Pioneer") was owned by Defendant BW Offshore USA Management, Inc.
("BW Offshore"). BW Offshore contracted with Petrobras America,
Inc. ("PAI"), which is not a party to this suit, for PAI to use the

1

Pioneer. Pursuant to this agreement, the Pioneer was to be repaired or modified in order to perform adequately for PAI. To accomplish this, BW Offshore entered into a contract with D&C whereby D&C's employees would perform the repair work on the Pioneer. This contract between BW Offshore and D&C is the Master Service Agreement ("MSA") that is the subject of the Defendants' current dispute. Gray provided insurance coverage to D&C.

Defendant BOA Marine time chartered the M/V BOA ROVER ("Rover") to PAI for the purpose of quartering D&C's employees who were working aboard the Pioneer. The Rover was anchored near the Pioneer for this purpose.

Plaintiff, Scott McKay, was a payroll employee of D&C. He was working as a welder aboard the Pioneer and was quartered aboard the Rover. Plaintiff allegedly fell and injured his back in an attempt to descend from the top bunk of his bunk bed on the Rover, and Plaintiff filed a complaint against all Defendants. D&C/Gray and BOA Marine filed cross-motions for summary judgment regarding the issue of whether, under the terms of the MSA between D&C and BW Offshore, D&C/Gray are required to defend, indemnify, and insure BOA Marine against Plaintiff's claims.

## LEGAL STANDARD

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the

movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.*, 37 F.2d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008). The Court will examine the evidence in the light most favorable to the nonmoving party. *Naquin v. Fluor Daniel Servs. Corp.*, 935 F. Supp. 847, 848 (E.D. La. 1996) (citing *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962)). While all reasonable inferences are drawn in favor of the nonmoving party, a party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions. *Little*, 37 F.2d at 1075. A Court ultimately must be satisfied that "a reasonable jury could not return a verdict for the nonmoving party." *Delta*, 530 F.3d at 399.

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263-64 (5th Cir. 1991) (citation omitted). The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may

not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings but must identify specific facts that establish a genuine issue for trial. *See, e.g., id.* at 325; *Little*, 37 F.3d at 1075.

## DISCUSSION

BOA Marine and D&C/Gray disagree as to whether D&C/Gray are required to defend, indemnify, and insure BOA Marine against Plaintiff's claims, pursuant to the terms of the MSA between D&C and BW Offshore. This is a legal question to be resolved by the Court and may be appropriately resolved on summary judgment.

### A.   INDEMNITY AND DEFENSE ISSUE

BOA Marine argues that D&C must defend and indemnify it because, under the term of the MSA, PAI is a "customer" of BW Offshore and is thus a member of the Owner Group, and because BOA Marine is a "representative" of PAI and thus is also a member of

the Owner Group.

Section 13.5 of the MSA provides:

> To the fullest extent permitted by applicable law, [D&C] agrees to protect, defend, indemnify and hold harmless Owner's Group from and against any and all Claims ... for personal or bodily injury to, for illness, disease or death of, or for loss of services, wages, consortium or society by any ... member [of Contractor's Group], which are asserted by or arise in favor of any member of Contractor's Group on account of any cause whatsoever ... .

(Rec. Doc. 33-3, p. 14). Section 13.3 provides that the term "Contractor's Group" includes D&C's "employees," among other parties. (Rec. Doc. 33-3, p. 13). Section 11.2 provides that the term "Owner's Group" includes:

> (I) [BW Offshore] ...
>
> (ii) its ... *customers* ...
>
> (iii) the ... *representatives* ... of those individuals and entities in (I) or (ii) hereinabove ... .

(Rec. Doc. 33-3, p. 11) (emphasis added). Therefore, under the

5

terms of the MSA, D&C will be required to defend and indemnify BOA Marine against Plaintiff's claims if (1) PAI is a customer of BW Offshore, and (2) BOA Marine is a representative of PAI.

### 1. IS PAI A CUSTOMER OF BW OFFSHORE?

BOA Marine claims that it is undisputed that PAI is a customer of BW Offshore. (Rec. Doc. 52, p. 2) (citing to D&C and Gray's Response to BOA Marine's Statement of Uncontested Material Facts, Rec. Doc. 42-1, ¶ 1). In the cited provision in D&C/Gray's Response to BOA Marine's Statement of Uncontested Material Facts, D&C/Gray stated: "It is admitted that [PAI] contracted with BW Offshore USA, Inc. ... for the use of the BW PIONEER." (Rec. Doc. 42-1, ¶ 1). In making this admission, D&C/Gray have not formally admitted that PAI is a *customer* of BW Offshore but merely that PAI and BW Offshore entered into a contract. Still, in their briefs, D&C/Gray have never expressly challenged BOA Marine's assertion that PAI is a customer of BW Offshore. Absent any argument to the contrary by D&C/Gray, the Court finds that PAI should be legally characterized as a customer of BW Offshore.

### 2. IS BOA MARINE A REPRESENTATIVE OF PAI?

Section 10.8 of the MSA the following definition of "representatives": "'Representatives' means, as to any Person specified, that Person's directors, officers, employees, ... *contractors*, *subcontractors*, ... and other Persons who are providing services to that Person in connection with the

6

performance of this Agreement." (Rec. Doc. 33-3, p. 11) (emphasis added). D&C/Gray's argument is that this definition does not apply to the entire MSA but only to the portion of the MSA contained under the heading "Intellectual Property; Confidentiality." (Rec. Doc. 42, p. 2-3). However, this argument fails because Section 26.1 clearly provides that "[t]he headings of the sections are for the convenience of reference only and shall not affect the interpretation of this Agreement." (Rec. Doc. 33-3, p. 24). Additionally, in reviewing the MSA, the Court has found no indication that the definition provided  in Section 10.8 was intended to have only limited application. Therefore, the Court will apply the definition of "representatives" contained in Section 10.8 to the entire MSA.

BOA Marine points out that "[t]he MSA's definition of 'representatives' specifically includes contractors and sub-contractors" and claims that it is a contractor or subcontractor of PAI. (Rec. Doc. 52, p. 5; Rec. Doc. 36-4, p. 3). D&C/Gray argue that BOA Marine is not a contractor *of BW Offshore* (Rec. Doc. 42, p. 2), but that is not the question. The question is whether BOA Marine is a contractor or subcontractor *of PAI*. In D&C/Gray's briefs, they have never argued that BOA Marine is not a contractor or subcontractor of PAI, and it is undisputed that BOA Marine and PAI entered into a time charter agreement pursuant to which PAI used the Rover to quarter D&C's employees working aboard the

Pioneer. The Court thus finds that BOA Marine is a contractor or subcontractor of PAI under the parties' time charter agreement, and thus that BOA Marine is a representative of PAI under the terms of the MSA. Because BOA Marine is a representative of PAI, and because PAI is a customer of BW Offshore, BOA Marine is a member of the Owner's Group under the terms of the MSA. Therefore, D&C is required to defend and indemnify BOA Marine against Plaintiff's claims.

## B.  INSURANCE ISSUE

Section 14.1 of the MSA provides:

> With respect to all work performed by or on behalf of [D&C] under this Contract, [D&C] shall procure, carry and maintain, at [D&C's] sole expense, insurance coverages ... . Such insurance coverages are being provided by [D&C] *in support of such indemnity obligations and other liabilities of [D&C]*.

(Rec. Doc. 33-3, p. 16) (emphasis added). Additionally, Section 13.15 provides:

> [D&C] and [BW Offshore] each agree to support the mutual indemnity obligations and mutual releases contained in this Agreement by providing equal amounts of insurance

8

coverage and/or qualified self-insurance of the types and

in amounts not less than those set forth in Section II of

Exhibit "C" ... .

(Rec. Doc. 33-3, p. 15).

D&C is thus required to provide insurance coverage to support its indemnity obligations to the entire Owners Group, which includes BOA Marine for the reasons discussed above.

**CONCLUSION**

Accordingly,

**IT IS ORDERED** that D&C/Gray's Motion for Summary Judgment (Rec. Doc. 33) is hereby **DENIED.**

**IT IS FURTHER ORDERED** that BOA Marine's Cross-Motion for Summary Judgment (Rec. Doc. 36) is hereby **GRANTED.**

**IT IS FURTHER ORDERED** that D&C and Gray shall defend, indemnify, and insure BOA Marine against all of Plaintiffs' claims.

New Orleans, Louisiana this 23rd day of October, 2013.

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE